**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2577
_____

FABRICIO NUNEZ MANJARREZ,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA No. A 201-112-559)
Immigration Judge: Steven A. Morley

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
On January 23, 2018

Before:  GREENAWAY, JR., KRAUSE, *Circuit Judges,*
and JONES, *District Judge.*[*]

(Opinion filed:  February 15, 2018)

_____

OPINION[†]

_____

[*] The Honorable John E. Jones, III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[†] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

_____

JONES, *District Judge*.

Fabricio Nunez-Manjarrez appeals the Board of Immigration Appeals' ("BIA") affirmance of Immigration's decision denying him withholding of removal, and relief under the Convention Against Torture ("CAT"). On appeal, Mr. Nunez-Manjarrez did not specifically challenge the Immigration Judge's finding that he had not timely filed his application for asylum. The BIA affirmed the remainder of the Immigration Judge's order, finding that Mr. Nunez-Manjarrez had not sufficiently shown past persecution or that he would suffer any future persecution because of certain statutorily protected grounds, and that Mr. Nunez-Manjarrez did not meet his burden of showing that torture would be more likely than not to occur if he were removed. We will affirm.

I.     **Background**

Mr. Nunez-Manjarrez is a Mexican native and citizen who entered the United States without inspection on August 22, 2005. His entire family lives in La Barca, a town in Jalisco, Mexico. His father and grandfather own land in La Barca and, according to Mr. Nunez-Manjarrez, had been extorted by local gangs because of their success in growing crops and raising livestock. Two other members of Mr. Nunez-Manjarrez's family suffered ill fates while Mr. Nunez-Manjarrez was in the United States. The first family member, a cousin on his father's side, mysteriously disappeared after leaving a job interview, and the second family member, on his mother's side, was killed. Although Mr. Nunez-Manjarrez does not know who committed these acts, he believes a criminal gang known as the "Zetas" was responsible. *Id.* Mr. Nunez-Manjarrez himself, however,

2

was never harmed while in Mexico. He also did not point to any other instances of harm coming to his immediate or extended family, which features up to twenty cousins, twenty uncles, and grandparents.

Removal proceedings commenced against Mr. Nunez-Manjarrez on August 12, 2011. On August 31, 2011, Mr. Nunez-Manjarrez appeared before the York Immigration Court and requested time to submit an application of asylum, which he did on October 19, 2011, along with an application for withholding of removal and relief under CAT. Proceedings continued in the Philadelphia Immigration Court on July 1, 2013, where Mr. Nunez-Manjarrez conceded that his asylum application was untimely. Mr. Nunez-Manjarrez also stated at that time that he would be requesting voluntary departure as alternative relief. After an individual hearing on November 14, 2016, the Immigration Judge found that Mr. Nunez-Manjarrez's application for asylum was time barred and that he had not met his burden with respect to withholding from removal and relief under CAT. On timely appeal, the BIA affirmed the Immigration Judge's ruling on June 21, 2017.

## II.    Jurisdiction and Standard of Review

The BIA had jurisdiction over Mr. Nunez-Manjarrez's appeal pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252(a)(1).

Although Mr. Nunez-Manjarrez has appealed the BIA's decision, "we also review the decision of the Immigration Judge, to the extent that the BIA adopted or deferred to the IJ's analysis." *Ying Chen v. Att'y Gen.*, 676 F.3d 112, 114 (3d Cir. 2011) (citing

3

*Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005)). To factual findings, we apply a deferential standard, accepting findings unless "'a reasonable adjudicator would be compelled to arrive at a contrary conclusion.'" *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009) (quoting *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 421 (3d Cir. 2005)). We review legal conclusions *de novo,* "'but will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering.'" *Toussaint v. Att'y Gen.*, 455 F.3d 409, 413 (3d Cir. 2006) (quoting *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005)).

## III.    Discussion

Mr. Nunez-Manjarrez sought withholding from removal pursuant to the Immigration and Nationality Act, which permits such withholding where "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Mr. Nunez-Manjarrez bore the burden of showing either past persecution on one of these grounds or, in the absence of past persecution, that he was more likely than not to suffer future persecution on one of these protected grounds. *See* 8 C.F.R. § 1208.16(b). Mr. Nunez-Manjarrez conceded that he has not experienced past persecution. With respect to future persecution, the Immigration Judge found that Mr. Nunez-Manjarrez's family constituted a "particular social group" of which he was a part. However, as aforestated, the Immigration Judge found, and the BIA affirmed, that Mr. Nunez-Manjarrez failed to show that he was more likely than not to suffer future persecution on account of his membership in that particular social group.

4

To this end, the Immigration Judge found that Mr. Nunez-Manjarrez could offer no evidence that the two members of his family who had been harmed were victims of targeted gang violence. The Immigration Judge also noted that all of Mr. Nunez-Manjarrez's family continues to live in the same town without incident. Although they have occasionally been extorted by local gangs, they were able to stop paying those gangs without violent repercussions. Both the Immigration Judge and the BIA imply that Mr. Nunez-Manjarrez is motivated more by the general violence in Mexico than by fear of being specifically targeted. We have held, however, that "'generally harsh conditions shared by many other persons do not amount to persecution.'" *Al-Fara v. Gonzales*, 404 F.3d 733, 740 (3d Cir. 2005) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). Thus, on the issue of withholding from removal, we find no error in the rulings of the BIA and Immigration Judge.

Mr. Nunez-Manjarrez also sought relief under CAT. To merit relief under CAT, Mr. Nunez-Manjarrez needed to show he was more likely than not to be tortured if removed to Mexico. 8 C.F.R. § 208.16(c)(2). We have stated that:

> For an act to constitute torture under the [CAT] and the implementing regulations, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions.

*Kamara*, 420 F.3d at 213 (alteration in the original) (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)). The fourth element can also be satisfied where public officials show "willful blindness" to torture committed by other, third parties. *Silva-Rengifo v.*

5

*Att'y Gen.*, 473 F.3d 58, 65 (3d Cir. 2007). The Immigration Judge found that Mr. Nunez-Manjarrez offered no evidence to support this fourth element, thus failing to show he was more likely than not to be tortured upon his return to Mexico. The BIA largely adopted the Immigration Judge's decision in affirming, and we agree, as well. Mr. Nunez-Manjarrez argued generally about the rival drug gangs that controlled the area but could not show that the Mexican government was willfully blind to the danger or that he was more likely than not to be tortured by one or more of the gangs. As a result, Mr. Nunez-Manjarrez simply did not meet his burden with respect to the fourth element.

## IV. Conclusion

For the foregoing reasons, we will affirm the determination of the Board of Immigration Appeals.